IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON

| | |
|---|---|
| CHRISTOPHER COVELL, | ) CASE NO. 5:21-CV-01296-JG |
| Plaintiff, | ) JUDGE JAMES GWIN |
| | ) UNITED STATES DISTRICT JUDGE |
| v. | ) |
| | ) MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) CARMEN E. HENDERSON |
| Defendant, | ) **REPORT AND RECOMMENDATION** |

## I. Introduction

Plaintiff, Christopher Covell, seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Supplemental Security Income ("SSI"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, the undersigned RECOMMENDS the Court REVERSE the Commissioner of Social Security's nondisability finding and REMAND this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

## II. Procedural History

On March 27, 2019, Covell filed applications for DIB and SSI, alleging a disability onset date of September 1, 2018. (ECF No. 8, PageID #: 226). The applications were denied initially and upon reconsideration, and Covell requested a hearing before an administrative law judge ("ALJ"). (ECF No. 8, PageID #: 177). On August 18, 2020, an ALJ held a hearing, during which Covell—represented by counsel—Covell's sister, and an impartial vocational expert testified. (ECF No. 8, PageID #: 84). On November 9, 2020, the ALJ issued a written decision finding

Covell was not disabled. (ECF No. 8, PageID #: 52). The ALJ's decision became final on April 30, 2022, when the Appeals Council declined further review. (ECF No. 8, PageID #: 41).

On July 6, 2021, Covell filed his Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 10, 11, 12). Covell asserts the following assignments of error:

> (1) Whether the ALJ explained why his RFC finding excluded the adaptation limitations offered by the State agency psychological consultants as was required by SSR 96-8p.
>
> (2) Whether the ALJ's RFC finding was an accurate portrayal of Plaintiff's remaining abilities

(ECF No. 10, PageID #: 1199).

## III. Background[1]

### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Covell's hearing:

> Akin to his initial written reports, Mr. Covell testified more substantially about his psychological symptoms relating to panic attacks, anxiety, nightmares and flashbacks, hearing voices and seeing things, suicidal thoughts, mood swings, and bad memory. He provided the recent urgent care visit and attending a cousin's funeral (just the day before the hearing) as affected by panic attacks. He stated that he left against medical advice to undergo further evaluation for the chest pain. He identified triggers of panic attacks in loud noises and being around other people, and he testified that he has about a dozen panic attacks in an average week (thus, more than one per day) that do not respond to prescribed medications or any other self-calming method that he can do, other than going outdoors into cold air (which he can only do in the winter months of the year), and take half an hour to subside.
>
> Continuing, Mr. Covell testified that he has nightmares and panic attacks each and every night, which limit sleep to no more than one

---

[1] Because Covell's challenges focus on his mental impairments, the Court does not discuss the background regarding his physical impairments.

2

> hour at a time and sometimes result in a need to take naps during the day. He also testified about having waking nightmares (appearing to describe flashbacks), hearing voices, and seeing people without faces and hands reaching to try to grab him. He estimated having suicidal thoughts about twice in a given week. He further described mood swings in which he throws and breaks things, and he reported past instances of having stabbed a brother and being found by his sister under a table holding the knife. In regards to all such psychological symptoms, Mr. Covell testified that taking several prescribed medications through Portage Path do not work and that all symptoms have continued without improvement.
>
> Lastly, in terms of the poor memory, Mr. Covell testified that his sister reminds him regularly about taking prescribed medications during the day, she reminds him about his medical appointments and drives him to those appointments, and he does not cook because of having forgotten food cooking that nearly caused a fire in the kitchen.

(ECF No. 8, PageID #: 65).

    B.    **Relevant Medical Evidence**

The ALJ also summarized Covell's health records and symptoms:

> I acknowledge the educational records from Akron City Schools that support a history of learning problems and receiving special educational services (Ex. 1F, 6F), and reports of memory and concentration difficulties within August 2018 evaluations by a counselor and by a psychiatrist during a period of incarceration for drug-related convictions (Ex. 3F/70,72). Mr. Covell was diagnosed with PTSD and with major depressive disorder at those August 2018 evaluations for initiating mental health treatment services, which consistent of supportive counseling and prescriptions for several medications (Ex. 3F/21,15,6-7). The PTSD symptoms stemmed from witnessed traumas, including during earlier years of the period of incarceration (2015-2016), and he engaged in self-cutting behavior in 2018.
>
> However, while recognizing the controlled environment, I also find the later 2018 and early 2019 progress notes from the psychiatrist and counselor at Trumbull Correctional Institution to report that Mr. Covell had been managing his symptoms of PTSD and major depression "without any significant crisis," had no impairment to gross cognition, displayed normal motor activity during sessions,

3

showed control over his behavior, and had no violations since 2014 (see, e.g., Ex. 3F/72,70,16). He was maintained in the general prison population (Ex. 3F/105,47,39). A December 2018 follow-up note indicates euthymic mood and congruent affect, no delusions or other abnormal thoughts, and reported improvement in symptoms with a recent medication adjustment E(x. 3F/18). In short, the prison mental health treatment notes relate generally improved and controllable symptoms of PTSD and major depression with medications and counseling services.

Shortly after his judicial release, Mr. Covell had been off his previously prescribed medications and, on February 8, 2019, presented to a counselor and to a psychiatrist (physician) at Portage Path Behavioral Health with his entire history of traumatic events and of multiple suicide attempts, not doing well off the medications in terms of depression, anxiety, paranoia, and experiencing some auditory and visual hallucinations (Ex. 10F/41,48,35-36). The psychiatrist observed moderately depressed and severely anxious mood, constricted and blunted affect, verbose presentation and needing to be redirected, and circumstantial speech. He diagnosed PTSD primarily along with a learning disorder and the history of drug (methamphetamine) use disorder in sustained remission, and he essentially restarted the claimant on an antidepressant medication, a medication to manage nightmares (Prazosin), and a low-dose antipsychotic for the hallucinations (Risperdal) (Ex. 10F/38,39). Of note, while the counselor who conducted the intake diagnostic evaluation on February 8, 2019 also found symptoms and anxious mood diagnostic of a generalized anxiety disorder with panic attacks, which I have included as among the claimant's severe mental impairments, that diagnosis does not appear to have been accepted by the psychiatrist who conducted the same-day initial evaluation, by the claimant's treating psychiatrists, or by the claimant's treating counselor (Ex. 10F/49; 4F; but see Ex. 10F/38; 10F/31,19,7; 13F/25,10,4).

In March 2019, Mr. Covell saw his psychiatrist, Michael Kesselring, P.M.H.N.P.-B.C., and counselor, Tomoko Sherrod, L.P.C.C.-S., for the first times and received dosage increases to the Risperdal and Prazosin medications for ongoing symptoms, a replacement of the antidepressant with a mood stabilizer (Depakote), and a treatment plan directed at stabilizing his mood and behavior, reducing anxiety and paranoia, and equipping him with coping strategies for managing his symptoms and stressors (Ex. 10F/28-32; 10F/26-27,23-25).

At such relatively early point in establishing treatment through

4

Portage Path, on May 28, 2019, Mr. Covell attended the aforementioned consultative psychological examination that was held in connection with this application. He presented to Bryan Krabbe, Psy.D., with depressive symptoms, including feeling down and sad and worthless most of the time; seeing and hearing things, and having nightmares and flashbacks of past witnessed traumatic events (accomplished suicide by a friend) and being unable to sleep, and having panic attacks when around other people (Ex. 9F/2-4). He did appear sad and displayed a downcast facial expression during the interview and evaluation. Dr. Krabbe diagnosed major depressive disorder and an unspecified trauma and stressor related disorder (Ex. 9F/6).

Additionally, as discussed in the preceding Finding's analysis, Dr. Krabbe also received his reports of past learning difficulties in both schooling and work history, he observed some deficits in memory abilities and attention/concentration during mental status examination (e.g., recalling only one of three words, reciting a digit span backwards, and performing serial mental subtractions), and he estimated and diagnosed borderline intellectual functioning (Ex. 9F/5,6).

While these diagnoses and associated symptoms and observation of depression at the time of the May 2019 examination are supportive of some significant limitations spanning all four areas of work-related mental functioning, Mr. Covell denied any current suicidal or homicidal ideations, did not express any imminent suicidal thinking, and did not endorse any frank swings of mood with physicality of throwing objects or harming others when asked by Dr. Krabbe (Ex. 9F/3,4). Moreover, he displayed no inappropriate anger or hostility, inappropriate comportment, or any observable clinical signs of anxiety during the one-on-one encounter with an unfamiliar individual. Instead, he was cooperative and pleasant, he established rapport adequately, he showed adequate energy level and good effort in completing tasks, he spoke at normal conversational speed, and he displayed no loose associations, flight of ideas, or delusional material in his thoughts. He also had no difficulty following conversationally or responding to direct questions. These findings from the examining psychologist are not consistent with the full extent of alleged and argued intensity and limiting effects of psychological symptoms, especially relating to PTSD, anxiety, and anger/irritability.

Following the consultative examination, Mr. Covell attended infrequent follow-up visits to his psychiatrist and to his counselor at Portage Path, at just once to each source in the months of June

5

2019 and September 2019, and only once in the interim to the counselor in July 2019, and still endorsing panic attacks, not sleeping due to nightmares, hearing voices at times, and adding that he feels rage at times and is "short fused" (Ex. 10F/16-17,4; 10F/12-13,14-15,1-3). Nurse Practitioner Kesselring adjusted the mood stabilizer and added medications for managing anxiety symptoms. Even so, the June 2019 psychiatric progress note relates no more than mild anxiety and depression in the claimant's mood, appropriate affect, and still normal memory abilities, logical thought processes, average activity and eye contact, and good attention/ concentration with minimal distractibility (Ex. 10F/17-18). In September 2019, the psychiatrist observed calm and "not anxious" appearance, mild depression and anxiety along with first notable sign of mild anger in mood, and otherwise stable and unremarkable clinical findings that are simply not consistent with the stated intensity of symptoms (Ex. 10F/4-5). He told Ms. Sherrod on the same day as the psychiatric follow-up visit that he was feeling good and less agitated on the adjusted medications (Ex. 10F/2).

After another gap in counseling, a December 6, 2019 follow-up note from Ms. Sherrod relates to difficulties with reading and learning, and a same-day psychiatric progress visit to Nurse Practitioner Kesselring reported that he was having "real bad" panic attacks and seeing things and hearing things (Ex. 13F/19-20; 13F/22-23). However, he endorsed more benefit from taking the previously prescribed mood-stabilizer, Depakote, than he initially thought and was replaced on that medication, with lithium added for the psychotic symptoms of major depression (Ex. 13F/23,25). Depression and anxiety was notably increased clinically at that time, but only to moderate clinical severity (Ex. 13F/24).

Again in the setting of a gap in any further attended or documented visits to his counselor over the first six months of 2020, only part of which is explainable by the COVID-19 Pandemic (see Ex. 13F/15,14), Mr. Covell presented to a late February 2020 psychiatric progress visit, which was notably conducted by a different staff psychiatrist, with a report of "doing much better" in all symptoms, denying any further hallucinations, still denying any suicidal thoughts, and stating that he was sleeping well on the adjusted medication regimen (Ex. 13F/9). The mental status exam done at that early 2020 office visit reflects no abnormal mood in terms of anxiety or anger and only mild depression (Ex. 13F/10).

A May 20, 2020 progress visit was held by video conferencing, and Nurse Practitioner Kesselring still observed mild depression

> with some moderate anxiety relating to not having his medications for an undisclosed period, but admitting that the medications "keep him calm" when he does take them (Ex. 13F/1,2-3). The psychiatrist again refilled the same medications of lithium, Depakote, Risperdal, and Prazosin and added as-needed use of gabapentin for managing anxiety. The most recent treatment note from Portage Path consists of a return to the counselor via July 27, 2020 telephone session, which focused complaints of being irritated and easily angered by "small things" and memory difficulties, but added that he had been watching his three grandchildren who were visiting him (Ex. 14F/2-3).

(ECF No. 8, PageID #: 68–71).

### C. Opinion Evidence at Issue

#### 1. State Agency Psychological Consultants

On June 7, 2019, Karla Delcour, Ph.D reviewed Covell's record and completed a disability determination explanation. Dr. Delcour concluded that Covell had a moderate limitation in understanding, remembering, and applying information, concentrating, persisting, or maintaining pace, and adapting or managing oneself. (ECF No. 8, PageID #: 155). More specifically, Dr. Delcour made the following relevant findings regarding Thacker's areas of mental functioning:

Understanding and Memory limitations:

Ability to understand and remember detailed instructions: Moderately limited.

Can perform simple, routine tasks

Concentration and persistence limitations:

Ability to carry out detailed instructions: Moderately limited

Ability to maintain attention and concentration for extended periods: Moderately limited

Ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods: Moderately

7

> limited
>
> Can perform simple, routine tasks in a job with no strict production quotas or fast paces
>
> <u>Social Interaction limitations</u>:
>
> No evidence of limitation in this category
>
> <u>Adaption limitations</u>
>
> Ability to respond appropriately to changes in the work setting: Moderately Limited
>
> Can respond appropriately to changes in the work setting that occur occasionally and are explained ahead of time

(ECF No. 8, PageID #: 143–45). On December 24, 2019, Vicki Warren, Ph.D. offered the same findings. (ECF No. 8, PageID #: 155, 159–60).

The ALJ found these opinions persuasive. The ALJ explained:

> The State agency PCs' administrative medical findings as to the moderate limitation in three areas of broad mental functioning and in specific corresponding work-related mental abilities are persuasive. They each offered strong support for their findings by analysis of the May 2019 consultative examination and included clinical observations that Dr. Krabbe made during the interview and mental status examination, and Dr. Warren considered at reconsideration the additional evidence from Portage Path (see Ex. 2A/6; 4A/6). The additional medical reports from Portage Path received at the hearing level do not persuasively indicate that their findings for no greater than moderate limitation in these areas of mental functioning are now inconsistent with the expanded medical evidence of record. For instance, the late 2019 and 2020 psychiatric progress notes reflect mildly to moderately anxious and mildly depressed mood, normal memory and good attention/concentration, and subjectively endorsed improvement from the adjusted medication regimen (see generally Ex. 13F, 14F).
>
> However, their findings as to only mild limitation in the claimant's ability to interact with others is less persuasive because it is not well supported by the examining psychologist's opinion or, available only to Dr. Warren at reconsideration, the summarized

8

> contents of the February 2019- September 2019 evaluations and treatment notes from the claimant's psychiatrist and counselor at Portage Path (see Ex. 2A/6; 4A/6). Specifically, Dr. Warren did not adequately account for or consider the documented and alleged symptoms of anxiety and panic attacks that reportedly occur around other people, the clinical observations made in 2019 treatment visits that reflect some initial anxiety in mood/affect and speech, or the diagnosis by the counselor who conducted the intake diagnostic assessment for GAD with panic attacks (though, such diagnosis has not been endorsed by the psychiatrists at Portage Path). The additional Portage Path records received at the hearing level do show some continued anxiety symptoms that have recently prompted an additional prescribed medication of gabapentin, which also show that the mild limitation in interacting with others is not consistent with the totality of the medical evidence. That said, my preceding analysis of all the medical evidence supports only moderate degree of limitation in this broad area of mental functioning and in corresponding mental abilities, and supports a residual ability for the claiming to have only occasional interactions with others—i.e., supervisors, coworkers, and the public—during a workday.

(ECF No. 8, PageID #: 75–76).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 2. The claimant has the following severe impairments: atherosclerotic coronary artery disease (CAD) with multiple stents, obesity, generalized anxiety disorder (GAD), major depressive disorder with psychotic features, posttraumatic stress disorder (PTSD), and borderline intellectual functioning (BIF) (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).
>
> 4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work, as defined in 20 CFR 416.967(b) including the exertional abilities to lift, carry, push, and pull up to 20 pounds occasionally and 10 pounds frequently, to sit for a total of 6 hours in a normal workday,

9

> and to stand or walk for 6 total hours in a normal workday, except that he is further limited in the following nonexertional respects:
> - Cannot climb ladders, ropes, or scaffolds but can occasionally climb ramps and stairs; can occasionally kneel and crawl; can frequently balance, stoop, and crouch;
> - Must avoid concentrated exposure to dusts, fumes, odors, gases, and poorly ventilated areas; must avoid workplace hazards such as unprotected heights or exposure to dangerous moving machinery, and cannot perform commercial driving;
> - Can perform only simple, routine tasks that do not involve arbitration, negotiation, or confrontation; cannot direct the work of others and cannot be responsible for the safety or welfare of others; cannot perform piece rate work or assembly-line work; and can have only occasional interaction with others.

(ECF No. 8, PageID#: 58–76).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial

evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B.  Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C.  Discussion

Covell raises two issues on appeal. First, Covell argues that the RFC is not supported by substantial evidence because the ALJ did not explain his failure to adopt the state agency consultants' adaption limitations after finding their opinions persuasive. Second, Covell argues

11

that the RFC is not supported by substantial evidence because it did not accurately portray Covell's ability to adapt to workplace stressors.

### 1. The ALJ Did Not Account for the Consultants' Limitation

State agency psychological consultants Dr. Delcour and Dr. Warren opined that Covell experienced a moderate limitation in his ability to adapt and manage himself and that he could only respond appropriately to workplace changes if they occur occasionally and are explained ahead of time. The ALJ found their opinion persuasive, concluded that Covell experienced a moderate limitation in adopting and managing himself, but did not specifically adopt the limitation regarding his ability to respond to workplace changes. Covell argues the ALJ's failure to explain why he did not adopt this limitation violated SSR 96-8p. The Commissioner responds that the ALJ was not obligated to incorporate the consultants' findings verbatim into the RFC or explain why he did not simply because he found those findings persuasive.

At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. §§ 404.1520(e). On January 18, 2017, the Social Security Administration amended the rules for evaluating medical opinions for claims filed after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." C.F.R. § 404.1520c(a).[2] Nevertheless, an ALJ must "articulate how [he] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. 20 C.F.R. § 404.1520c(a).

---

[2] The "treating source rule," which generally required the ALJ to defer to the opinions of treating physicians, was abrogated by 20 C.F.R. § 404.1520c for claims filed on or after March 27, 2017, such as here.

This is consistent with SSR 96-8p, which states: "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." "It is well-established that an ALJ need not adopt all findings in a medical opinion when determining an RFC." *Fiktus v. Kihakazi*, No. 1:20CV1689, 2021 WL 5567866, at *9 (N.D. Ohio July 29, 2021), (citing *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009), *report and recommendation adopted sub nom. Fiktus v. Comm'r of Soc. Sec.*, No. 1:20-CV-01689, 2021 WL 5566805 (N.D. Ohio Nov. 29, 2021)). However, although there is no requirement that the ALJ adopt opinions he finds persuasive "verbatim," the ALJ is still required to explain why he did not adopt a portion of an opinion if the RFC conflicts with it. *Kearns v. Comm'r of Soc. Sec.*, No. 3:19 CV 01243, 2020 WL 2841707, at *13 (N.D. Ohio Feb. 3, 2020); *see also Stoodt v. Comm'r of Soc. Sec.*, 2022 WL 721455, at *15 (N.D. Ohio Jan. 13, 2022).

Regarding Covell's mental impairments, the RFC states:

> Can perform only simple, routine tasks that do not involve arbitration, negotiation, or confrontation; cannot direct the work of others and cannot be responsible for the safety or welfare of others; cannot perform piece rate work or assembly-line work; and can have only occasional interaction with others.

(ECF No. 8, PageID #: 64). Importantly, the ALJ did not explicitly adopt the consultants' limitation that Covell can only respond appropriately to workplace changes if they occur occasionally and are explained ahead of time. Covell correctly points out that the ALJ found the consultants' opinions persuasive and, in fact, stated that they "offered strong support" for their findings.[3] Although the Commissioner is correct that the ALJ was not required to adopt the

---

[3] The Commissioner argues that the ALJ did not intend to adopt the opinions verbatim because he found one aspect of the consultants' opinions less persuasive. However, this

13

opinions verbatim, "the ALJ must nevertheless explain why he failed to include articulated limitations where he has found that the RFC is consistent with that medical opinion." *Hankinson v. Comm'r of Soc. Sec.*, No. 2:18-CV-58, 2019 WL 6695821, at *4 (S.D. Ohio Dec. 9, 2019) (citations omitted), *report and recommendation adopted,* No. 2:18-CV-58, 2020 WL 240812 (S.D. Ohio Jan. 16, 2020). The Commissioner does not point to—and the undersigned does not find on its own—any explanation of why the ALJ did not include a limitation regarding Covell's ability to adapt to workplace changes anywhere in the decision. As a result, the ALJ failed to build a logical bridge between the consultants' opinions and the RFC. Because the VE was not questioned regarding this limitation, the undersigned cannot conclude that this error was harmless. *See Miley v. Comm'r of Soc. Sec.*, No. 2:19-CV-3206, 2020 WL 1180730, at *6 (S.D. Ohio Mar. 12, 2020), *report and recommendation adopted*, No. 2:19-CV-3206, 2020 WL 1434460 (S.D. Ohio Mar. 24, 2020) (stating that the court could not find that the error was harmless where the VE had not been questioned on the specific limitation). Accordingly, Covell's first argument is well taken. As this reason alone is sufficient for remand, the undersigned will not address his second argument.

VI.  **Recommendation**

Based on the foregoing, it is RECOMMENDED that the Court REVERSE the Commissioner of Social Security's nondisability finding and REMAND this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

Dated: April 25, 2022

---

argument works against the Commissioner's position. The ALJ explicitly stated where he disagreed with the consultants' opinion but did not state that he disagreed with their adaption limitation. Thus, this argument is not persuasive.

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

_____

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530–31 (6th Cir. 2019).